Opinion Issued April 1, 2004
















     





In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01063-CR




THE STATE OF TEXAS, Appellant

V.

GARY WAYNE STONE, Appellee




On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Cause No. 35,351




O P I N I O N
 
          The State of Texas appeals the trial court’s suppression of evidence collected
from appellee Gary Wayne Stone’s computer pursuant to a search warrant.


 In two
points of error, the State argues that (1) “the issuing magistrate reached the reasonable
conclusion that a search would uncover evidence that appellee had distributed
harmful sexual material to a minor from the computer in appellee’s home” and (2)
Texas Penal Code section 43.24 is constitutional as applied to Stone.


 We reverse
and remand. 
Background
          Appellant was charged with attempted display of harmful material to a minor,
as well as 43 counts of possession of child pornography after a search of his computer
uncovered various images of child pornography. 
          The following facts are derived from Sergeant Leah Dalton’s evidentiary search
warrant affidavit and the trial court’s hearing on appellant’s motion to suppress. 
          On June 7, 2001, Dalton submitted an affidavit in support of a search warrant
to District Court Judge Brady Elliot. Dalton averred that Gary Wayne Stone, a
Rosenberg Police Department officer, committed the offense of sale, distribution, or
display of harmful material to a minor in violation of Texas Penal Code section
43.24(b)(1). A person commits this offense if, knowing that the material is harmful
and knowing the person is a minor, he sells, distributes, exhibits, or possesses harmful
material for sale, distribution or exhibition to a minor. Tex. Pen. Code Ann. §
43.24(b)(1) (Vernon 2003). Dalton wished to search Stone’s residence and seize
evidence tending to show that Stone committed this or a closely related criminal
offense. In particular, Dalton wished to recover any and all computer systems; any
computer hardware; “any correspondence and other contacts with children in personal
journals, books, magazines, videotapes, still photographs, and reproductions of the
above”; any obscene materials kept or prepared for commercial distribution or
exhibition; and any implements or instruments used in the commission of a crime. 
          Dalton then stated the probable-cause facts. On June 1, 2002, Dalton received
information from Sergeant Scott Hefner that Hefner had received a packet from
Wisconsin Department of Justice Special Agent Eric Szatkowski in reference to Gary
Wayne Stone. The packet from Szatkowski contained a compilation of e-mail
messages, photographs, and America Online (AOL) instant message conversations
between Stone (alias BearCop 53) and another person who appeared to be a 13-year-old female named Erica (alias BuffyTheVSer), but who was actually Szatkowski
posing as the teenage female. 
          On April 30, 2001, Szatkowski, acting as Erica, received an AOL Instant
Message from Stone. During their online conversation, Stone inquired into Erica’s
age. Erica told Stone that she was 13 years old and going to be “14 in June.” Also
during this conversation, Stone revealed that he was a police officer whose name was
Gary. During this and other conversations on May 2, May 12, May 16, May 26, and
May 31, 2001, Stone engaged in explicit conversations with Erica, talking about
performing oral sex on each other, masturbation, breast size, visiting each other,
being together, and orgasms. 
          Stone sent Erica a sexually explicit picture of himself exposing his genitals. 
Stone also provided Erica his cell phone and pager number, which were confirmed
as belonging to Stone. The AOL homepage for “BearCop 53,” Stone’s alias,
contained a picture of Stone in his Rosenberg Police Department Uniform, sitting in
his patrol vehicle. During one conversation, Stone sent Erica three pictures of
himself. The first pictures showed Stone’s head and shoulders; the second picture
showed him lying on his back, naked, clutching his genitals; the third picture showed
him naked, lying on his side exposing his buttocks. During another conversation,
Stone told Erica that his last name was Stone. 
          On June 7, 2001, Dalton received notification from Szatkowski that Stone was
currently online. Dalton went to Stone’s house to verify that he was at home, and
Stone came to the door. Dalton verified that Stone was the same person depicted in
the photographs sent to Erica. Szatkowski verified that Stone had logged off of his
computer when Dalton approached the house. 
          Based on the affiant’s probable-cause facts in the affidavit, and the affiant’s
belief that Stone had committed the offense of display of harmful material to a child,
Judge Brady Elliott issued a search warrant on June 7, 2001. The search warrant
authorized the search of Stone’s Rosenberg residence based on the belief that the
offense of sale, distribution, or display of harmful material to a minor in violation of
Penal Code section 43.24 had been committed. A search of Stone’s residence
resulted in the seizure of a computer that contained various images of child
pornography. 
          On June 8, 2001, based on a similar affidavit, County Court at Law Judge
Walter McMeans issued an arrest warrant for Stone. The arrest warrant notes that the
affiant believed that Stone committed the offense of display of harmful material to a
minor. Later, it confirms that the affiant requested the arrest warrant for prosecution
of the offense of Attempted Display of Harmful Material to a Minor. All other
aspects of the search warrant affidavit and arrest warrant affidavit are identical,
including the probable cause section. Stone was charged with 43 counts of
possession of child pornography and three counts of attempted display of harmful
material to a minor. 
          Stone filed a motion to suppress any and all “tangible evidence seized.” Stone
claimed that the search warrant violated the Texas and United States Constitutions
because it was improperly and illegally executed. In particular, Stone argued that the
affidavit in support of the warrant did not reflect sufficient probable cause because
it lacked sufficient underlying circumstances to establish the credibility of the affiant
and to permit the conclusion that the alleged contraband was at the location in which
it was claimed to be. He further argued that section 43.24(b)(1) was unconstitutional
as applied to him because it is not legally possible to commit the offense via the
internet, because the transmission of an image over the internet does not satisfy the
section’s definition of “material.” Finally, Stone claimed that section 43.24(b)(1) was
facially unconstitutional; it is not sufficiently tailored to avoid violating the First
Amendment because the recipient’s age cannot be verified over the internet. After
a hearing and the filing of briefs on the motion to suppress, the trial court granted
Stone’s motion. The State now appeals. 
Discussion
          In reviewing the trial court’s ruling on the motion to suppress, we apply a
bifurcated standard of review. Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim.
App. 2000). We give almost total deference to the trial court’s determination of
historical facts that depend on credibility, while we conduct a de novo review of the
trial court’s application of the law to the facts. Id. Because the trial court did not
make findings of fact or conclusions of law in granting Stone’s motion to suppress, 
the State must address and prevail on every theory that could have supported the trial
court’s granting of the motion to suppress in order to prevail on appeal. Villarreal
v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). 
Probable Cause 
          In its first point of error, the State argues that the trial court improperly granted
Stone’s motion to suppress evidence seized pursuant to a search warrant. The State
contends that the search warrant affidavit was adequate to establish probable cause 
and that the magistrate properly performed his duty. In his motion to suppress, Stone
argued first that the offense could not be committed in cyberspace because of the 
definition of harmful “material,” and that, consequently, there was (1) no offense
committed supporting the search warrant and (2) no basis to establish probable cause. 
Additionally, Stone claimed that the search warrant affidavit lacked underlying
circumstances that would permit the conclusion that the alleged contraband was at the
location where it was claimed to be; that the affidavit failed to state underlying
circumstances sufficient to establish the credibility of the affiant; and that the
information in the search warrant affidavit was stale. Finally, Stone argued that the 
magistrate failed to manifest the neutrality and detachment demanded of a judicial
officer when presented with a warrant application. 
 
          Standard of Review 
          We review de novo the trial court’s application of the law of search and seizure
and probable cause. State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000);
Wilson v. State, 98 S.W.3d 265, 271 (Tex. App.—Houston [1st Dist.] 2002, pet.
ref’d). Appellate review of an affidavit in support of a search warrant, however, is
not de novo; rather, great deference is given to the magistrate’s determination of
probable cause. Illinois v. Gates, 462 U.S. 213, 236-37, 103 S. Ct. 2317, 2331
(1983); Uresti v. State, 98 S.W.3d 321, 334 (Tex. App.—Houston [1st Dist.] 2003,
no pet.). The test for determination of probable cause is whether the magistrate had
a substantial basis for concluding that a search would uncover evidence of
wrongdoing. Gates, 462 U.S. at 236, 103 S. Ct. at 2331. 
          Probable cause to support the issuance of a search warrant exists when the facts
submitted to the magistrate are sufficient to justify a conclusion that the object of the
search is probably on the premises to be searched at the time the warrant is issued. 
Cassias v. State, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986). To justify the
issuance of a search warrant, the affidavit submitted in support must set forth facts
sufficient to establish probable cause that (1) a specific offense has been committed;
(2) specifically described property or items to be searched for and seized constitute
evidence of the offense; and (3) the property or items constituting such evidence is
located at the particular place to be searched. Tex. Code Crim. Proc. Ann. art.
18.01(c) (Vernon Supp. 2004). Whether the facts mentioned in the affidavit are
adequate to establish probable cause depends on the totality of the circumstances. 
Ramos v. State,  934 S.W.2d 358, 362-63 (Tex. Crim. App. 1996). Statements made
during a motion to suppress hearing do not factor into the probable cause
determination; rather, we examine only the four corners of the affidavit to determine
whether probable cause exists. Massey v. State, 933 S.W.2d 141, 148 (Tex. Crim.
App. 1996); Wilson, 98 S.W.3d at 270-71. Reasonable inferences may be drawn from
the affidavit, and the affidavit must be interpreted in a common sense and realistic
manner. Wilson, 98 S.W.3d at 271.
          The task of a magistrate in issuing a search warrant is to make a practical,
common-sense decision, given all the circumstances set forth in the warrant’s
supporting affidavit, including the veracity and basis of knowledge of persons
supplying hearsay information, regarding whether there is a fair probability that
contraband or evidence of a crime will be found in a particular place. Gates, 462 U.S.
at 238, 103 S. Ct. at 2332. The duty of a reviewing court is simply to determine
whether, considering the totality of the circumstances, the magistrate had a substantial
basis for concluding that probable cause existed to support the issuance of the warrant
when viewing the affidavit. Id. 
          Application of Section 43.24(b)(1) —Display of Harmful Material 
          Before determining whether the search warrant affidavit contains sufficient
facts for a magistrate to determine that probable cause for the search existed, we must
first analyze Stone’s contention that the statute cannot be violated in cyberspace. In
his motion to suppress and again in his brief, Stone argues that Texas Penal Code
section 43.24 cannot apply to cyberspace situations. In particular, Stone argues that 
only statutes which specifically prohibit the transmission of “visual material” prohibit
the transmission of computer images; that the legislature’s definition of “harmful
material” in the “Display of Harmful Material to a Minor” statute, section 43.21 of
the Texas Penal Code, does not include “visual material” as defined in other sections
of Chapter 43 of the Penal Code, specifically section 43.26 “Possession or Promotion
of Child Pornography”; and, because section 43.21 does not specifically prohibit the
transmission of such visual material, it cannot be violated via the internet. Stone
further argues that, because it is not possible to violate section 43.21(b)(1) over the
internet, and because affiant’s belief that the statute has been violated forms the basis
of probable cause for the issuance of the search warrant, there is not sufficient
probable cause for the issuance of the search warrant. 
          The State, on the other hand, contends that section 43.24 does apply to the
internet and that Stone unduly restricts the definition of “harmful material.” 
Consequently, the State argues that the search warrant affidavit sufficiently
established probable cause. We agree with the State.
          Section 43.24 makes it an offense to sell, distribute, or display “harmful
material” to a minor. “Harmful material” is defined by the statute as material whose
dominant theme “appeals to the prurient interest of a minor in sex, nudity, or
excretion”; is “patently offensive” to community standards of suitability for minors;
and is “utterly without redeeming social value for minors.” Tex. Pen. Code Ann. 
§ 43.24(a)(2). “Material,” in turn, is defined for purposes of section 43.24 as
“anything tangible that is capable of being used or adapted to arouse interest, whether
through the medium of reading, observation, sound, or in any other manner, but does
not include an actual three dimensional obscene device.” Tex. Pen. Code Ann.
§ 43.21(a)(2). The Penal Code does not define “tangible.” However, “tangible,” in
its general common sense meaning, means “capable of being touched or sensed.” 
Black’s Law Dictionary 1468 (7th ed. 1999). Something viewed on the computer
screen is something that can be sensed visually. Furthermore, the character of
information is not transformed whether it is communicated by a fax machine, a
telephone, or a computer. See Sawyer v. Tex. Dep’t of Criminal Justice,  983 S.W.2d
310, 312 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). Therefore, if a picture,
such as those Stone sent exposing himself, is tangible (as it is), sending it over the
computer does not alter its status, and it remains tangible even though it subsequently
has been communicated from one person to another via a computer. Internet transfer
is a medium that the statute contemplates, although it is not explicitly enumerated. 
Therefore, internet e-mails, pictures, or communications fall within the Penal Code’s
definition of “material,” as these communications are capable of being used or
adapted to arouse interest through the medium of internet transmission. Thus, it is
legally possible to violate Penal Code section 43.24 by displaying harmful materials
in cyberspace. We hold that the pictures and communications Stone sent to Erica are
“harmful materials” within the meaning of section 43.24. 
          Search Warrant Affidavit 
          We next determine whether the search warrant affidavit was otherwise
adequate to establish probable cause. Applying the appropriate standard, looking to
the four corners of the affidavit, giving the magistrate’s decision to issue the warrant
great deference by deferring to the reasonable inferences from the facts set forth in
the affidavit and a common sense and practical interpretation of the affidavit, and
considering the totality of the circumstances, we hold that the magistrate had probable
cause to believe that (1) the offense of displaying harmful material to a minor had
been committed; (2) the items to be seized mentioned in the search warrant—namely,
Stone’s computer and items related to the computer, correspondence with children,
obscene materials kept for exhibition, and related items—would constitute evidence
of the offense; and (3) such items would be located at Stone’s residence. See Tex.
Code Crim. Proc. Ann. art. 18.01(c).
          Based on the search warrant affidavit, it was reasonable for the magistrate to
conclude that the offense of distribution of harmful materials to a minor occurred. 
The communications and exchanges between Stone and Erica set forth in the affidavit
demonstrate that Stone distributed harmful materials to Erica, who had represented
to him that she was a 13-year-old minor. The fact that 13-year-old Erica did not exist,
but was rather being portrayed by an adult male Department of Justice agent, was a
factual condition unknown to Stone that merely made it factually impossible for him
to complete the offense under the particular circumstances; it did not make the
commission of the offense legally impossible, i.e., impossible under all
circumstances. See Chen v. State, 42 S.W.3d 926, 930 (Tex. Crim. App. 2001). 
Factual impossibility provides no defense to Stone’s attempt to complete the offense. 
Id. 
          Nor was it unreasonable for the magistrate to have inferred that these
communications originated from Stone’s home computer. Indeed, in his brief to the
trial court on his motion to suppress, Stone admitted that it was reasonable for the
magistrate to conclude that a computer was the instrumentality of the crime. It was
also reasonable for the magistrate to infer that the commission of the offense occurred
at Stone’s residence. The statute, requiring that the affidavit set forth sufficient facts
to establish probable cause to believe that the property or items constituting evidence
to be searched for or seized is located at or on the person, place, or thing to be
searched, merely requires that there be probable cause to believe that the items are
located in the general location, i.e., that the object of the search is probably on the
premises. Ramos v. State, 934 S.W.2d at 363.
          Sexual activity is usually an intimate, private matter that often takes place in
one’s home. Courts have acknowledged that “it makes sense that a person would
keep their [sic] records of this intimate activity in their [sic] home, a place not subject
to the eyes of the public absent invitation.” State v. Duncan, 72 S.W.3d 803, 807
(Tex. App.—Fort Worth 2002, pet. dism’d). Although there may be other theories
of where or how Stone committed the offense, the affidavit is not required to exclude
every other reasonable hypothesis. Geesa v. State, 820 S.W.2d 154, 155 (Tex. Crim.
App. 1991). 
          In his motion to suppress, Stone relied heavily on the Amarillo Court of
Appeals decision in Taylor v. State, 54 S.W.3d 21 (Tex. App.—Amarillo 2001, no
pet.). The Amarillo Court of Appeals recently held that an affidavit did not establish
probable cause for a warrant to search a defendant’s home when it was based on
internet transmission of child pornography by a screen name, because the affidavit did
not sufficiently connect the defendant with that screen name. Id. at 24-26. In
particular, the Amarillo Court of Appeals concluded that the information in the
warrant only showed that someone using an alias had sent contraband over the
internet, that the defendant had used the alias at one time, and that the State had the
defendant’s address. Id. at 27. 
          In this case, by contrast, the affidavit sufficiently connected Stone with his
screen name. Stone used an alias related to his job, namely “BearCop53”; and the
corresponding homepage for “BearCop53” contained a picture of Stone in his police
uniform sitting in his patrol vehicle. Stone identified himself by name and sent a 
photograph of himself to Erica. He also provided Erica with his cell phone and pager
numbers—information that was ultimately traced back to his home address. Finally,
when Dalton received information that BearCop had logged off the internet, she went
to Stone’s residence and confirmed not only that he was home, but also that he was
the same person depicted in the photographs. 
          Stone also cited to several technical errors present in the affidavit as a basis for
the trial court to conclude that the search warrant affidavit lacked probable cause. 
First, he cited to improper labeling of the offense in the search warrant affidavit as a
violation of section 43.24 of the Penal Code when he was charged only with an
attempted violation of that statute. However, the fact that an affidavit lists one
offense and the facts in the affidavit establish probable cause to prove a closely
related or lesser offense does not invalidate the warrant. See Bosari v. State, 919
S.W.2d 913, 918 (Tex. App.—Houston [14th Dist.] 1996, pet. ref’d); Hall v. State,
753 S.W.2d 438, 441 (Tex. App.—Texarkana 1988), rev’d on other grounds, 795
S.W.2d 195 (Tex. Crim. App. 1990). Stone also argued that there were insufficient
underlying circumstances to establish the credibility of the affiant. However,
credibility of the affiant is not a requirement of a probable cause search warrant
affidavit when no confidential informants are used to establish probable cause.


 
Barton v. State, 962 S.W.2d 132, 138 (Tex. App.—Beaumont 1997, pet. ref’d). 
          Additionally, Stone argued that the information in the search warrant affidavit
was stale. It was not. Probable cause ceases to exist when it is no longer reasonable
to presume that items once located in a specified place are still there. Rowell v. State,
14 S.W.3d 806, 809-10 (Tex. App.—Houston [1st Dist.] 2000), aff’d, 66 S.W.3d 279
(Tex. Crim. App. 2001); Hafford v. State, 989 S.W.2d 439, 440 (Tex. App.—Houston
[1st Dist.] 1999, pet. ref’d). The proper method to determine whether the facts
supporting a search warrant have become stale is to examine, in light of the criminal
activity involved, the time elapsing between the occurrence of the events set out in
the affidavit and the time the search warrant was issued. Rowell, 14 S.W.3d at 809. 
When the affidavit recites facts indicating activity of a protracted and continuous
nature, the passage of time becomes less significant. Id. 
          Here, the affidavit demonstrates an ongoing, continuous course of conversation
and exchanges throughout the entire month of May 2001. The search warrant
affidavit was issued on June 7, 2001. Only one week had passed between the last
communication and the issuance of the search warrant. Considering the fact that
Stone and Erica had been communicating for over two months, thus indicating that
their conversations would likely continue, the information in the affidavit was not
stale. The affidavit sufficiently allowed the magistrate to conclude that a fair
probability existed that the evidence sought would be found at Stone’s home on his
computer. See Gates, 462 U.S. at 238, 103 S. Ct. at 2332. 
          Finally, Stone alleged that the magistrate acted without the necessary
neutrality. He provided no evidence to support his claim, however; and, therefore,
the trial court could not have granted Stone’s motion to suppress on this ground. 
Stone cites to the magistrate’s failure to look at the allegedly obscene materials, but
it is not necessary that a magistrate personally view allegedly obscene material prior
to issuing a warrant; rather, the magistrate can conclude there is probable cause based
on an affidavit’s description of the obscene materials. New York v. P.J. Video, Inc.,
475 U.S. 868, 876, 106 S. Ct. 1610, 1616 (referring to magistrate’s viewing of content
of film in making probable cause determination). 
          Overall, the affidavit provides sufficient facts to enable the magistrate to
conclude that an offense had been committed; that items described in the search
warrant affidavit, such as Stone’s computer, constituted evidence of the offense; and
that such items could be found at Stone’s residence. Examining the totality of the
circumstances and the facts alleged in the probable cause affidavit, we hold that the
trial court erred in granting Stone’s motion to suppress based on lack of probable
cause. We sustain the State’s first point of error. 
Constitutionality of Texas Penal Code Section 43.24 

          In its second point of error, the State argues that the trial court erred in
suppressing the evidence taken from Stone’s computer on constitutional grounds. 
Specifically, the State argues that the trial court erred in granting Stone’s motion to
suppress on the implied ground that the application of section 43.24(b)(1) of the
Texas Penal Code to cyberspace situations offends the United States and Texas
Constitutions because it is overbroad. 
          All laws carry a presumption of validity, and the party challenging a statute has
the burden of establishing its unconstitutionality. Ex Parte Granviel, 561 S.W.2d
503, 511 (Tex. Crim. App. 1978); Haddad v. State, 9 S.W.3d 454, 458 (Tex.
App.—Houston [1st Dist.] 1999, no pet.). Thus, a defendant must show that the
statute, in its operation, is unconstitutional as applied to him in his situation; it is not
sufficient that it might be unconstitutional as applied to others. Bynum v. State, 767
S.W.2d 769, 774 (Tex. Crim. App. 1989). A statute is considered impermissibly
overbroad if, in addition to proscribing activities that may be constitutionally
prohibited, it sweeps within its coverage speech or conduct protected by the First
Amendment. Id. at 772. 
          A person commits an offense under Penal Code section 43.24(b)(1) if,
“knowing that the material is harmful: (1) and knowing the person is a minor, he sells,
distributes, exhibits, or possesses for sale, distribution or exhibition to a minor
harmful material.” Tex. Pen. Code Ann. § 43.24(b)(1). A person commits the
offense of criminal attempt if, “with specific intent to commit an offense he does an
act amounting to more than mere preparation that tends, but fails, to effect the
commission of the offense intended.” Tex. Pen. Code Ann. § 15.01(a). To establish
the offense of attempt to violate section 43.24(b)(1), the State need only prove that
the defendant had the specific intent to display harmful material to a minor and that
he committed an act amounting to more than mere preparation that tended but failed
to effect the commission of the offense. See Tex. Pen. Code Ann. § 15.01(a). 
          Stone argues that “the statute, as written, prohibits all conversation regarding
sex, nudity, or excretion in cyberspace between adults (even if not obscene) due to
the fact that age verification is not presently possibly in cyberspace.” In other words,
he argues that the statute sweeps too broadly when it is applied to the transmission
of harmful material by means of a computer because it permits someone to be charged
with the crime of displaying harmful material to a minor (1) even though he has no
way of verifying that the person to whom he displays the proscribed material actually
is a minor and (2) even though the material may not be obscene as to the person to
whom it is displayed, namely an adult. 
          As support for his argument, Stone relies on Reno v. American Civil Liberties
Union, 521 U.S. 844, 117 S. Ct. 2329 (1997). Reno struck down as overbroad parts
of the Communications Decency Act (CDA), 47 U.S.C. § 223 (1994 ed. Supp. II), a
federal statute that sought to protect minors from harmful material on the internet. 
One of the challenged sections of the CDA, section 223(a)(1)(B), prohibited a person
from knowingly transmitting “obscene or indecent” communications by means of a
telecommunications device, “knowing that the recipient of the communication is
under 18 years of age.” 47 U.S.C. §223(a)(1)(B). The Court held that this provision
was overbroad solely insofar as it embraced “indecent” communications. 521 U.S. at
860, 117 S. Ct. at 2338-39. It expressly preserved the government’s right to
investigate and prosecute the knowing transmission of obscene communications by
means of a telecommunications device to a recipient under 18 years of age. Id. at
864, 117 S. Ct. at 2340. 
          The Court also struck down section 223(d) of the CDA, which prohibited the
knowing sending or display of “patently offensive” communications (A) “to a specific
person or persons under 18 years of age” or (B) “in a manner available to a person
under 18 years of age” because these “open-ended prohibitions” embraced anyone
posting indecent messages or displaying them on his or her own computer in the
presence of minors, thereby encompassing potentially large amounts of
constitutionally protected material with serious educational or other value, as well as
unprotected obscene material. Id. at 859-60, 864, 117 S. Ct. at 2338-39, 2341
(quoting 47 U.S.C. §§ (d)(1)(A),(B)). 
          In holding that sections 223(a) and (d) were unconstitutionally overbroad, the
Court was particularly concerned that the CDA proscribed the communication of both
“indecent” and “patently offensive” material without defining those terms and that it
ignored “the fact that most internet forums—including chat rooms, newsgroups, mail
exploders, and the Web—are open to all comers,” so that the defendant could not
know who was receiving the message or to whom it was being made available. See
id. at 880, 117 S. Ct. at 2349. At the same time, the Court acknowledged that “[t]he
problem of age verification differs for different uses of the internet.” Id. at 855, 117
S. Ct. at 2336. 
          Stone urges us to see in section 43.24(b)(1) of the Texas Penal Code, an
unconstitutionally overbroad statute of the same type as section 223(d) of the CDA,
which the Supreme Court held to be intrinsically overbroad both because it contained
undefined terms and because it applied indiscriminately to all uses of the internet that
might be “available” to minors, rather than a provision akin to section 223(a) of the
CDA, which the Court held to be overbroad solely insofar as it reached “indecent”
material. We decline to do so.
          In Ginsberg v. New York, 390 U.S. 629, 88 S. Ct. 1274 (1968), the Supreme
Court held that a state may constitutionally enact a statute that prohibits a person from
exhibiting to children material determined to be obscene as to them, although not to
adults, so long as the statute contains a scienter requirement; that is, the sale,
distribution or display of obscene material to a minor must be made “knowingly.” Id. 
at 643-44, 88 S. Ct. at 1283; see also Smith v. California, 361 U.S. 147, 152-53, 80
S. Ct. 215, 218-19 (1959). Such a law is called a “variable obscenity statute.” State
v. Thiel, 515 N.W.2d 847, 854 (Wis. 1994). Thus, in Ginsberg, the Supreme Court
overruled a vagueness challenge to a New York statute which prohibited “knowingly”
selling material harmful to a minor. Ginsberg, 390 U.S. at 643-45, 88 S. Ct. at 1283
(construing Penal Law N.Y. 1965 § 484–h).


 
          The vagueness challenge to the constitutionality of the New York statute at
issue in Ginsberg centered on the knowledge required for a successful prosecution.
The statute allowed prosecution of a defendant who had “reason to know” both the
content of the material and the age of the minor or “a belief or ground for belief”
warranting further inspection or inquiry of both the content of the material and the
age of the minor; and it provided for the acquittal of a defendant who proved that he
“made ‘a reasonable bona fide attempt to ascertain the true age of such minor.’” Id.
at 645-46, 88 S. Ct. at 1283-84 (quoting Penal Law N.Y. 1965 § 484–h(1)(g)(ii)). 
In upholding the statute, the Supreme Court declined either to further define the
mental element required for a successful prosecution of the statute with respect to the
character of the material sold or displayed or to delineate the efforts the defendant
must make to determine the age of the recipient in order to be excused. Id.; see also
Smith, 361 U.S. at 154, 80 S. Ct. at 219. Subsequently, in U.S. v. X-Citement Video
Inc., the Court reaffirmed the importance of scienter requirements in child
pornography statutes as to both the nature of the material and the age of the victim.
513 U.S. 64, 78, 115 S. Ct. 464, 472 (1994) (reading 18 U.S.C. §§ 2252(a)(1), (2) as
requiring scienter both as to content of material and age of victim). Again, the Court
did not further define the mental element required for a successful prosecution.
          Section 43.24 of the Texas Penal Code is a constitutionally permissible variable
obscenity statute of the type approved in Ginsberg and Reno. A person commits an
offense under section 43.24(b)(1) if he sells, distributes, or displays harmful material,
“knowing the material is harmful . . and knowing the person is a minor.” Tex. Pen.
Code Ann. § 43.24(b)(1). “Harmful material,” is defined by section 43.24 as obscene
material, namely that which appeals to the prurient interest of a minor, is patently
offensive to prevailing standards as to suitable material for a minor, and is utterly
without redeeming social value for minors. Tex. Pen. Code Ann. § 43.24(a)(2). The
constitutionality of statutes prohibiting the display of such material was upheld
against a vagueness challenge in Bryers v. State, 480 S.W.2d 712, 715-17 (Tex. Crim.
App. 1972) (statute defining obscene material as that which, taken as whole appeals
to prurient interest, is patently offensive, and is utterly without redeeming social value
is not unconstitutionally vague); see also Roth v. United States, 354 U.S. 476, 77 S.
Ct. 1304 (1957). Moreover, section 43.24 contains scienter requirements with respect
to both the type of material displayed and the person to whom it is displayed. The
question, therefore, becomes whether it is possible for a person who sends sexually
explicit material by means of a computer to a specific recipient, as in Stone’s case,
to know both that the material is harmful to minors and that the recipient is a minor
so that the statute can be enforced only against those persons with such knowledge
and therefore does not sweep within its scope constitutionally protected adult
communications.
          Under Texas law, an accused’s knowledge of the content and character of
obscene material may be shown by either direct or circumstantial evidence. Carroll
v. State, 701 S.W.2d 913, 914 (Tex. Crim. App. 1986); Glass v. State, 761 S.W.2d
806, 807 (Tex. App.—Houston [1st Dist.] 1988, no writ); see also Allen v. State, 478
S.W.2d 946, 947 (Tex. Crim. App. 1972) (defendant’s “lascivious intent” to
knowingly and intentionally expose private parts to person under 16 inferred from
defendant’s conduct of twice exposing himself to 15-year-old and her friends, his
motions and gestures, and surrounding circumstances). No particular kind of
evidence is required. Glass, 761 S.W.2d at 807. 
          Likewise, knowledge that the victim of a sexual offense is a minor can be
inferred from “the conduct of, by remarks of and circumstances surrounding the acts
engaged in by an accused.” Turner v. State, 600 S.W.2d 927, 929, 930–31 (Tex.
Crim. App., [Panel Opinion], 1980) (construing Texas Penal Code section
21.11(a)(2), prohibiting indecent exposure involving a child; defendant’s
maneuvering car into vision of 12-year-old and exposing himself above console
sufficient to infer knowledge and intent); see also McKenzie v. State, 617 S.W.2d
211, 216 (Tex. Crim. App. [Panel Opinion] 1981) (construing same provision and
Texas Penal Code section 21.11(a)(1), prohibiting sexual contact with a child). 
          Here, the photographs Stone transmitted constitute evidence that Stone
knowingly transmitted harmful material to a specific recipient, ‘Erica,’ over his home
computer. Because he transmitted the material after he had asked ‘Erica’ her age and
she had replied that she was 13 years old “going on 14,” there is also evidence that
he intended to transmit this material to a minor. Had Erica, in fact, been 13 years old,
Stone’s question and Erica’s response would also have been evidence of Stone’s
knowledge that Erica was a minor. See Allen, 478 S.W.2d at 947; Turner, 600
S.W.2d at 929, 930–31. Thus, we find that it is not impossible for a person to know
that the person to whom he has transmitted harmful material by computer in the type
of circumstances presented by this case is a minor. Nor is it impossible for the State
to prove scienter. Therefore, Stone has not shown that section 43.24 sweeps within
its scope constitutionally protected communications. His challenge to section 43.24
as constitutionally overbroad fails.



          We find it significant that none of the state law ‘harmful to minors’ statutes
struck down by the federal courts as unconstitutional in the cases cited by Stone
contained a scienter provision respecting the age of the minor similar to that in
section 43.24 of the Texas Penal Code.


 We also find it significant that the California
courts have upheld as constitutional a state statute criminalizing the distribution and
exhibition of harmful material “by electronic mail, the Internet . . . , or a commercial
online service” by a person “with knowledge that [the recipient] is a minor, or who
fails to exercise reasonable care in ascertaining the true age of a minor.” Hatch v.
Superior Court, 80 Cal. App. 4th 170, 207, 94 Cal. Rptr 2d 453, 480 (2000, rev.
denied) (construing California Penal Code section 288.2(a,b)); People v. Hsu, 82 Cal.
App.4th 976, 982, 99 Cal. Rptr 2d 184, 189 (2000, rev. denied).
          Finally, Stone’s argument that section 43.24(b)(1) of the Penal Code is
unconstitutional as applied to him because Erica was not, in fact, a 13-year-old girl
but a 50-year-old man is unavailing. This argument fails to distinguish between legal
and factual impossibility. “[F]actual impossibility exists when, due to a physical or
factual condition unknown to the actor, the attempted crime could not be completed.”
Chen, 42 S.W. 3d at 929. In other words, the actor’s objective is forbidden by the
criminal law, even though he is prevented from reaching that objective because of
circumstances unknown to him. Id. If Erica had been younger than 18 years old and
thus an actual minor as defined by the Distribution of Harmful Materials to a Minor
statute, then what the State contends Stone intended to accomplish (distribution of
harmful material to a minor) could have been accomplished, constituting an offense
under section 43.24. 
          Due to a factual condition unknown to Stone, namely that Erica was actually
Szatkowski, a 50-year-old man, the offense of distribution of harmful material to a
minor could not be completed. However, Stone was not charged with an actual
violation of section 43.24(b)(1), but with an attempted violation of the statute, which
made the offense factually impossible but not legally impossible. See Chen, 42
S.W.3d at 929 (discussing legal and factual impossibility, attempt, and age of alleged
victim as applied to sexual performance by child statute); Yalch v. State, 743 S.W.2d
231, 233 (Tex. Crim. App. 1988) (discussing required elements of criminal attempt). 
Because Stone is charged with attempted display of harmful material to a minor under
section 15.01(a) of the Penal Code, and not with an actual violation of section
43.24(b)(1), it is immaterial that the crime of display of harmful material to a minor
was factually impossible to complete. Chen, 42 S.W.3d at 930. 
          We hold that section 43.24 of the Texas Penal Code is not unconstitutionally
overbroad when applied to a person who knowingly transmits harmful material by
means of a computer to a person the sender knows to be a minor, or when applied to
a person who knowingly attempts to transmit such material to a person the sender
believes to be a minor. 
          We sustain the State’s second point of error.



Conclusion
          Having found that the search warrant affidavit sufficiently established probable
cause and that Stone has failed to establish that section 43.24(b)(1) of the Penal Code
is unconstitutional, we reverse the trial court’s order granting the motion to suppress
and remand the cause for further proceedings. 
 
 
                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Taft, Keyes, and Bland.

Publish. Tex. R. App. P. 47.4.