NO. 07-02-0280-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



FEBRUARY 21, 2003


______________________________



DEANA LOWERY
,




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE 217TH DISTRICT COURT OF ANGELINA COUNTY;



NO. 22,918; HON. DAVID V. WILSON, PRESIDING


_______________________________



Before JOHNSON, C.J., QUINN, J., and BOYD, S.J. (1)

 Through one issue, appellant Deana Lowery contends that the trial court erred in
overruling her motion to suppress evidence obtained pursuant to the execution of a search
warrant. She was allegedly entitled to have the evidence suppressed because the affidavit
tendered to convince the neutral magistrate to issue the warrant failed to establish
probable cause to conclude that the contraband sought was probably at the location to be
searched. We agree and reverse the judgment.


Standard of Review


 Whether the trial judge erred in denying a motion to suppress depends upon
whether he abused his discretion. Guzman v. State, 955 S.W.2d 85, 87 (Tex. Crim. App.
1997); Taylor v. State, 54 S.W.3d 21, 24 (Tex. App.--Amarillo 2001, no pet.). Whether he
abused his discretion depends upon whether the decision fell outside the zone of
reasonable disagreement. Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.
1991); Taylor v. State, 54 S.W.3d at 24. In making the latter determination, we defer to the
trial court's resolution of historical fact. Guzman v. State, 955 S.W.2d at 89; Taylor v.
State, 54 S.W.3d at 24. Yet, the same is not true about the trial court's interpretation of
law or application of law to fact; regarding those issues, no deference is required for review
is de novo. Id. 

 Next, it is beyond dispute that a search warrant may not be issued unless sufficient
facts are presented to a magistrate which permit him to conclude that probable cause
exists supporting the warrant's issuance. Tex. Code Crim. Proc. Ann. art. 18.01(b)
(Vernon Supp. 2000); Taylor v. State, 54 S.W.3d at 24. Furthermore, these facts must be
contained in a "sworn affidavit" accompanying the application for the warrant, id., and
illustrate 1) that a specific offense was committed, 2) that the specifically described
property or items to be sought and seized constitute evidence of that offense or evidence
that a particular person committed the offense, and 3) that the property or items in question
are located at or on the particular person, place or thing to be searched. Tex. Code Crim.
Proc. Ann. art. 18.01(c); Taylor v. State, 54 S.W.3d at 24. Whether the facts mentioned
in an affidavit are adequate to establish probable cause depends on the totality of the
circumstances. Ramos v. State, 934 S.W.2d 358, 362-63 (Tex. Crim. App. 1996), cert.
denied, 520 U.S. 1198, 117 S.Ct. 1556, 137 L.Ed.2d 704 (1997); Taylor v. State, 54
S.W.3d at 24. The facts do so when they permit one to reasonably conclude that the
object of the search is probably on the premises. Id. In other words, the magistrate must
have before him sufficient facts upon which to reasonably conclude that "there is a fair
probability that contraband or evidence of a crime will be found in a particular place." 
Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); Taylor
v. State, 54 S.W.3d at 24. And, it is our duty to insure that the magistrate had a
"'substantial basis'" for so concluding. Illinois v. Gates, 462 U.S. at 238-39, 103 S.Ct. at
2332, 76 L.Ed.2d 527; Taylor v. State, 54 S.W.3d at 24. Finally, in reaching his decision,
the magistrate may draw reasonable inferences from facts and circumstances alleged in
the affidavit before him. Ramos v. State, 934 S.W.2d at 363; Taylor v. State, 54 S.W.3d
at 24.

 Application of the Standard

 Because the dispute concerns the existence of probable cause to support the
magistrate's decision to issue the search warrant, we restrict our review of the record to the
four corners of the affidavit accompanying the request for the warrant. Oubre v. State, 542
S.W.2d 875, 877 (Tex. Crim. App. 1976). According to the contents of the affidavit at bar,
permission was sought to search a home located at 104 Mistywood Street (the residence
or suspected place). The affiant believed that appellant had "possession of, and is
concealing at said suspected place . . . [methamphetamine] kept, prepared or
manufactured in violation of the laws of this state [and] other paraphernalia, implements,
instruments, and packaging used in the commission of the offense of Manufacture,
Possession and Delivery of" that controlled substance. The affiant further said that:

 On April 18, 2002, affiant received information from a [reliable] confidential
informant . . . referred to as CI#1 . . . that within the past twenty four hours
. . . CI#1 had personally been to the residence . . . at 104 Mistywood Street
. . . and had spoken with a white male personally known by the CI#1 to be
Bryan Golden. Affiant personally knows that . . . Golden was present at a
location in Angelina County when a methamphetamine laboratory was seized
along with a quantity of methamphetamine. CI#1 advised affiant that . . .
Golden appeared to be under the influence of methamphetamine and that
. . . Golden stated . . . that "we just cooked dope last night and I am
'tweaking' out" [sic]. From training and experience, I know that "tweaking" is
slang . . . which indicates they have ingested methamphetamine. Affiant
further believes CI#1 to be credible and reliable in that [appellant] and . . .
Golden have been associated with the manufacture and/or use of
methamphetamine in the past as detailed in the affidavit.


So too did the affiant 1) generally describe various methods by which the controlled
substance could be manufactured, 2) opined that one method (the Nazi method) was an
easy one to utilize and required "only ordinary beverage containers such as drip style
coffee pots, buckets, mason jars, funnels and common kitchen glassware and utensil," and
3) appellant allegedly was arrested once before for possessing a controlled substance over
a year earlier. Notably absent from the affidavit, however, is any mention of 1) where
Golden allegedly "cooked dope" the night before, 2) what method was allegedly used to
"cook" it, 3) whether he used a method that enabled him to "cook" dope at the residence,
4) the presence of chemicals or equipment in the residence that could be used to "cook"
methamphetamine, 5) the presence of methamphetamine or matter that looked like it in
the residence (aside from that allegedly coursing through Golden's body), 6) whether
methamphetamine was previously made at the residence, 7) whether methamphetamine
is normally made in a residence, 8) the time at which Golden allegedly "tweak[ed] out" on
methamphetamine, 9) the time period over which such a drug and its affects dissipate from
the body, 10) whether the unique odor accompanying the manufacture of
methamphetamine was present in the residence, (2) 11) whether Golden or appellant was at
the residence on the night the drug was "cooked," 12) the location in Angelina County
whereat the police previously seized the contents of a methamphetamine laboratory, 13)
the location whereat appellant was previously arrested for possessing a controlled
substance, or 14) the nature of the substance that she allegedly possessed when
previously arrested. 

 In short, the pertinent and substantive allegations purportedly justifying the search
of the residence consisted of nothing more than the statement that methamphetamine was
cooked within the previous 24 hours at some unmentioned place by Golden and someone
else, Golden was later found intoxicated, Golden was previously at some unmentioned
location where drug paraphernalia was seized at some time or another, and appellant was
previously arrested for possessing a controlled substance. These circumstances differ little
from those before us in State v. DeLeon, No. 07-95-0339-CR ( Tex. App.--Amarillo 1996,
no pet.). (3) There, the magistrate was told that drugs had been purchased from DeLeon
within the last 24 hours but not the location of the sale. Nor was it told that the affiant or
informant saw any drugs at the location to be searched. Given those circumstances, we
concluded that the allegations were not enough to establish probable cause justifying
issuance of a search warrant to search the suspected location. We find reason and
foundation in that holding and in its application to the circumstances before us. So, in view
of the complete absence of any facts regarding the presence of 1) methamphetamine
(save for that suggesting that Golden supposedly ingested the drug at some unmentioned
time and at some unmentioned place), or 2) methamphetamine making equipment or
chemicals at the residence to be searched, one cannot reasonably say there exists a fair
probability that such a drug and the paraphernalia used to make it were at the residence. 
Too many gaps are to be filled with guess, hope, and surmise when attempting to infer
from the fact that drugs were made somewhere by a person who was high that drugs were
made at the place to be searched. See Hass v. State, 790 S.W.2d 609, 612 (Tex. Crim.
App. 1990) (concluding that one cannot reasonably infer that drug making equipment can
be found in a warehouse simply from the fact that the individual possessed drugs in his car
while outside the warehouse). And, whatever discretion to which the trial court is entitled
cannot be used to fill them.

 Thus, the trial court erred in failing to grant appellant's motion and suppress the
evidence of the contraband found as a result of the search. Furthermore, since that search
provided the evidence of appellant's guilt, we conclude that the error was harmful per
Texas Rule of Appellate Procedure 44.2(a). 

 Accordingly, the judgment is reversed and the cause is remanded for further
proceedings.

 

 Brian Quinn

 Justice


Publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't
Code Ann. §75.002(a)(1) (Vernon Supp. 2003).
2. Courts have recognized for some time now that a unique odor emanates from the manufacture of
methamphetamine. See Hass v. State, 790 S.W.2d 609, 612 (Tex. Crim. App. 1990) (so recognizing); Wynn
v. State, 996 S.W.2d 324, 327 (Tex. App.--Fort Worth 1999, no pet.) (noting that methamphetamine had a
distinct sweet smell). 
3. Though the opinion went unpublished and constitutes no binding precedent, its reasoning is
nonetheless persuasive. Moreover, the fact that an opinion is unpublished does not mean that a court is free
to disregard the law and arrive at any conclusion it may care to when addressing the dispute there involved. 
Quite the contrary, the law must be followed when adjudicating each appeal irrespective of whether the
ensuing opinion is published or not, and we have no doubt that it was followed in DeLeon. Simply put, there
is little reason to ignore the thought contained, legal citation mentioned, and conclusions arrived at in DeLeon,
though the opinion itself may not be binding precedent. 



amily: Times New Roman"> John T. Boyd

 Chief Justice


Do not publish.
1. There was, however, clearly a conflict in the testimony of appellant's witnesses,
which placed him in two locations over the same 15-minute period.