02-09-387-CR















 

 

 

COURT OF APPEALS

SECOND
DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00387-CR

 

 


 
 
 JOHN DAN HOGAN
 
 
  
 
 
 APPELLANT
 
 


                                                                                                                             

V.

 


 
 
 THE STATE OF TEXAS
 
 
  
 
 
 STATE
 
 


 

 

------------

 

FROM COUNTY
 CRIMINAL COURT NO. 3 OF TARRANT
COUNTY

 

------------

 

OPINION

 

------------

          In three related issues, appellant
John Dan Hogan appeals his conviction for driving while intoxicated (DWI).[1]  He contends that the trial court erred by
denying his motion to suppress evidence that the police obtained after
arresting him.  We affirm.

Background Facts

          On an early fall morning in 2008, Fort
Worth Police Department Officer C.D. Harris was on patrol when he heard another
officer, who was on a bike, say on the radio that a car was driving dangerously
and going the wrong way on a one-way street. 
Officer Harris found a car that matched the description that he had been
given; the car had just been stopped because of another patrol officer’s command.  As appellant stepped out of the car, Officer
Harris placed handcuffs on him.[2]  Officer Harris noticed that appellant smelled
like alcohol, had bloodshot and watery eyes, had slurred speech, and was
swaying and unsteady.  Appellant failed three
field sobriety tests; he showed six clues of intoxication on the horizontal-gaze-nystagmus
test, six clues on the walk-and-turn test, and three clues on the one-leg-stand
test.[3]

          Officer Harris placed appellant in the
patrol car and took him to jail.  Officer Harris
then read the statutory warning to appellant about providing a breath specimen,
and appellant refused to give one.  After
giving appellant the walk-and-turn and one-leg-stand tests again in an intoxilyzer room, Officer Harris placed appellant in a
holding cell while he typed a search warrant affidavit to draw appellant’s
blood because appellant had refused the breath test. A municipal magistrate
read the affidavit and signed the warrant, and Officer Harris took appellant to
a hospital, where a medical professional took appellant’s blood sample.[4]

          The State charged appellant with
DWI.  Appellant filed a motion to
suppress evidence related to his blood draw and statements that he made to the police after his arrest.  After an evidentiary hearing, the trial court
granted the suppression of appellant’s statements but denied appellant’s motion
relating to the blood draw.  About a
month later, under a plea agreement, appellant pled nolo
contendere. 
The trial court sentenced him to 365 days’ confinement, but it suspended
the sentence and placed him on two years’ community supervision. Appellant
preserved his right to bring this appeal.

The Denial of Appellant’s Motion to Suppress

          In three related issues, appellant
argues that (1) the search warrant issued to obtain his blood specimen was not
supported by probable cause and therefore violated the United States and Texas
constitutions, and (2) the affidavit supporting the warrant did not comply
with article 18.01 of the code of criminal procedure because it did not contain
sufficient facts showing probable cause that an offense had been committed.[5]

Standard of review and applicable law

          The police may obtain a defendant’s blood
for a DWI investigation through a search warrant.  Beeman v. State,
86 S.W.3d 613, 616 (Tex. Crim. App. 2002); see
Tex. Code Crim. Proc. Ann. art. 18.01(j) (Vernon Supp. 2010); State v. Johnston, 305 S.W.3d 746, 750
(Tex. App.—Fort Worth 2009, pet. granted). A search warrant cannot issue
unless it is based on probable cause as determined from the four corners of an
affidavit.  U.S. Const. amend. IV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. Ann. art. 18.01(b) (“A sworn
affidavit . . . establishing probable cause shall be filed in every instance in
which a search warrant is requested.”); Nichols
v. State, 877 S.W.2d 494, 497 (Tex. App.—Fort Worth 1994, pet. ref’d).  When reviewing
a magistrate’s decision to issue a warrant, we apply a highly deferential
standard in keeping with the constitutional preference for a warrant.  Rodriguez
v. State, 232 S.W.3d 55, 59–60 (Tex. Crim. App. 2007) (“[E]ven in close cases we give great deference to a magistrate’s
determination of probable cause to encourage police officers to use the warrant
process rather than making a warrantless search and later attempting to justify
their actions by invoking some exception to the warrant requirement.”); Swearingen v. State, 143 S.W.3d 808, 810–11
(Tex. Crim. App. 2004); Emenhiser v. State, 196 S.W.3d 915, 924–25 (Tex.
App.—Fort Worth 2006, pet. ref’d).

          Under the Fourth Amendment and the
Texas constitution, an affidavit supporting a search warrant is sufficient if,
from the totality of the circumstances reflected in the affidavit, the
magistrate was provided with a substantial basis for concluding that probable
cause existed.  Swearingen, 143 S.W.3d at 810–11; Nichols, 877 S.W.2d at 497.  Probable
cause exists to issue an evidentiary search warrant if the affidavit shows
facts and circumstances to warrant a person of reasonable caution to believe
that the criteria set forth in article 18.01(c) of the code of criminal
procedure have been met.  Tolentino v. State, 638 S.W.2d 499, 501 (Tex.
Crim. App. [Panel Op.] 1982); see
Tex. Code Crim. Proc. Ann. art. 18.01(c).  The affidavit must set forth facts establishing
that (1) a specific offense has been committed, (2) the item to be seized
constitutes evidence of the offense or evidence that a particular person committed
the offense, and (3) the item is located at or on the person, place, or thing
to be searched.  See Tex. Code Crim. Proc. Ann. art.
18.01(c); Tolentino,
638 S.W.2d at 501.

          A reviewing court should not
invalidate a warrant by interpreting the affidavit in a hypertechnical
manner.  See Rodriguez, 232 S.W.3d
at 59; Tolentino,
638 S.W.2d at 501 (explaining that “[n]o magical
formula exists” for an affidavit’s explanation of probable cause); Nichols, 877 S.W.2d at 498.  Rather, when a court reviews an issuing
magistrate’s determination, the court should interpret the affidavit in a
commonsense and realistic manner, recognizing that the magistrate may draw
reasonable inferences.  See Rodriguez, 232 S.W.3d
at 61 (“When in doubt, we defer to all reasonable inferences that the
magistrate could have made.”); Davis v.
State, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006); Nichols, 877 S.W.2d at 498. 
“The issue is not whether there are other facts that could have, or even
should have, been included in the affidavit; we focus on the combined logical
force of facts that are in the affidavit, not those that are omitted from the
affidavit.”  Rodriguez, 232 S.W.3d at 62; see
Nichols, 877 S.W.2d at 498 (“A
warrant is not invalid merely because the officer failed to state the obvious.”).  The magistrate’s determination should prevail
in doubtful or marginal cases.  Flores v. State, 319
S.W.3d 697, 702 (Tex. Crim. App. 2010).

Analysis

          Officer Harris’s affidavit included
the following facts:

          I am a peace officer of
the State of Texas, . . . and I have good reason to
believe that heretofore, . . . HOGAN,
JOHN DAN . . . did . . . commit an offense relating to the operating
of a motor vehicle while intoxicated namely:

          On October 26, 2008 I Officer CD Harris was assisting A633 (Officer EA
Bentley #3480) who had called out with a wrong way driver.  Officer Bentley stated that the IMP[[6]] was traveling westbound in the 200 block
of W. 5th St which is for eastbound traffic only. . . .  The IMP then turned westbound onto 300 W. 6th
ST and ran two red lights . . . .  The
IMP was also driving recklessly as it swerved around other cars on the roadway.
. . .  The IMP then turned southbound
onto Forest Park Blvd where Officer’s [sic] were able to finally catch up to
the IMP and conduct a traffic stop.  I
was on scene . . . by this time and I was able to make contact with [appellant].  While speaking with him I could smell the
strong odor of an alcoholic beverage on or about the person of [appellant] as
well as observed that he had bloodshot, watery[,] and heavy eyes.  [Appellant] had swayed and unsteady balance
as well as swayed, unsteady[,] and staggered
walk.  At that time I believed he was
possibly intoxicated by means of alcohol and requested that [appellant] perform
a field sobriety evaluation which yielded the following results:  HGN-6 clues with vertical nystagmus, WAT-6
clues, OLS-3 clues. 
At that time I placed [appellant] under arrest for driving while intoxicated
and transported him to [jail] . . . where he refused to provide a breath
specimen.

The
affidavit concluded by requesting a warrant to seize appellant’s blood and
therefore gain evidence for a DWI charge.

          The warrant that the magistrate signed
incorporated Officer Harris’s affidavit and said that the facts contained
within it were sufficient to establish probable cause for medical personnel to draw
a specimen of appellant’s blood. The trial court’s conclusions of law state in
part,

          Judge Kelms
was a neutral, impartial magistrate when she issued the warrant.

          The search warrant was
lawful and valid.

          . . . .

          [Appellant’s] blood
sample was seized pursuant to a search warrant validly executed in accordance
with Articles 18.01 and 18.02 of the Code of Criminal Procedure . . . .

          Appellant contends that the affidavit
did not establish probable cause to issue the warrant for his blood specimen
because it contained “conclusory and nonsensical
statements.”  Specifically, appellant
asserts that the affidavit is defective because it

·       
describes the driving path of an “IMP” but does not explain to the
magistrate what “IMP” means and does not explicitly state that appellant was driving
the “IMP” or was otherwise operating a motor vehicle;

 

·       
uses “HGN,” WAT,” and “OLS” without defining those acronyms or
explaining the significance of the number of “clues” as related to the acronyms,
and therefore the affidavit does not show appellant’s intoxication; and

 

·       
does not state that Officer Harris is qualified to
conduct field sobriety tests or that he has experience in DWI cases.

 

          While the affidavit could have been
clearer, in according deference to the magistrate’s determination, we cannot
agree with appellant that it failed to establish probable cause to show that he
had committed DWI and that his blood could provide evidence of that
offense.  Although the affidavit never
specifically stated that appellant was the person who was driving the “IMP,” it
explained that Officer Harris had good reason to believe that appellant had
operated a motor vehicle, described how officers saw a car progress recklessly and
illegally through the streets of Fort Worth, explained that officers stopped
the car that they observed being driven recklessly and illegally, and then said
that at the scene of the stop, Officer Harris made contact with appellant.  The affidavit does not indicate that anyone
other than appellant (and other police officers) was at the scene (and
therefore does not create doubt that someone else could have driven the “IMP”).  Thus, we conclude that the magistrate could
have reasonably inferred that appellant drove the vehicle described in the
affidavit.  See Rodriguez, 232 S.W.3d at 61.

          Next, we acknowledge that the
affidavit could have been more explicit concerning appellant’s performance on
the field sobriety tests because it did not define the sobriety tests’ acronyms
or explain the nature or significance of the tests.  But even if we assume that the magistrate did
not understand Officer Harris’s acronyms or know about the tests, the affidavit
still informed the magistrate in plain language that appellant showed fifteen
combined clues of intoxication on the tests. 
And apart from the sentence concerning the tests, the affidavit stated
that appellant recklessly drove a vehicle; that he had a “strong odor” of
alcohol, “bloodshot, watery[,] and heavy eyes,” a swayed
and unsteady balance, and a staggered walk; and that he had refused to provide
a breath specimen.  These facts alone were
sufficient to show probable cause that appellant committed DWI.  See State v. May, 242 S.W.3d 61, 62 (Tex. App.—San Antonio 2007, no
pet.) (mem. op.); Learning v. State, 227 S.W.3d 245, 249
(Tex. App.—San Antonio 2007, no pet.) (mem.
op.); Reynolds v. State, 902 S.W.2d
558, 560 (Tex. App.—Houston [1st Dist.] 1995, pet. ref’d);
see also Tex. Dep’t of Pub. Safety v. Gilfeather, 293 S.W.3d 875, 880–81
(Tex. App.—Fort Worth 2009, no pet.) (en
banc op. on reh’g) (holding
that there was substantial evidence to show probable cause for DWI when the
appellee was stopped for speeding, had bloodshot eyes, swayed, smelled like
alcohol, and refused to participate in field sobriety tests).

          Finally, although the affidavit might
have been more complete if it had detailed Officer Harris’s experience in DWI
cases, we hold that such information was not required to make the affidavit
adequate.  See Davis, 202 S.W.3d at 156 (explaining that an officer’s statement that he recognized
the odor of methamphetamine reasonably implied that he had experience
with the odor generated by the process of cooking methamphetamine). 
Many of the facts included in Officer Harris’s affidavit would lead an
untrained, common person to believe that appellant was driving the vehicle
while he was intoxicated.  See Brinegar
v. United States, 338 U.S. 160, 175, 69 S. Ct. 1302, 1310 (1949) (“In
dealing with probable cause . . . we deal with probabilities.  These are not technical;
they are the factual and practical considerations of everyday life on which
reasonable and prudent men, not legal technicians, act.”); Small v. State, 977 S.W.2d 771, 774 (Tex. App.—Fort Worth 1998, no
pet.) (citing Brinegar and explaining that
probable cause is a “common sense standard requiring only a probability of
criminal activity rather than an actual showing of such activity”).

          Appellant cites a decision from the
court of criminal appeals to conclude that Officer Harris’s affidavit was
invalid because it was conclusory.  See
Jones v. State, 833 S.W.2d 118, 124 (Tex. Crim. App. 1992), cert. denied, 507 U.S. 921 (1993).  In Jones,
an officer’s search warrant affidavit in a murder case attempted to link the
defendant to the murder by stating only that the defendant’s fingerprints
matched fingerprints taken from the scene. 
Id.  The court of criminal appeals held that the
affidavit was insufficient because there “were no facts that would lead a
neutral and detached magistrate to conclude that appellant was the perpetrator
of the crime and not merely an ordinary houseguest.”  Id.  In contrast, as explained above, Officer
Harris’s affidavit provided sufficient facts to allow the magistrate to
reasonably infer that appellant committed a crime by operating a motor vehicle in
a public place while intoxicated.  Other
cases relied on by appellant are similarly distinguishable.  See
Cassias v. State, 719 S.W.2d 585, 590 (Tex. Crim. App. 1986) (op. on reh’g) (holding that an affidavit to search a house for
drugs was insufficient because it was “too disjointed and imprecise to warrant
a man of reasonable caution in the belief that marihuana and cocaine
would be found” there); Taylor v. State,
54 S.W.3d 21, 27 (Tex. App.—Amarillo 2001, no pet.) (holding that there was no
probable cause to search a defendant’s home for child pornography based only on
the facts that governmental authorities received contraband by someone using an
alias, obtained information that the defendant used the alias at some time, and
knew where the defendant lived).

          For these reasons, we hold that the
facts contained within Officer Harris’s affidavit, along with reasonable
inferences from those facts, allowed the magistrate to conclude that there was
probable cause to sign the search warrant.  See Rodriguez,
232 S.W.3d at 61. 
The affidavit and warrant complied with the United States and Texas
constitutions and article 18.01 of the code of criminal procedure; therefore,
the trial court did not err by denying appellant’s motion to suppress.  See
U.S. Const. amend. IV; Tex. Const.
art. I, § 9; Tex. Code Crim. Proc. Ann. art.
18.01.  We
overrule appellant’s three issues.

Conclusion

          Having overruled appellant’s issues,
we affirm the trial court’s judgment.

 

 

                                                                             
 
 
 
 
 
 
 
 TERRIE LIVINGSTON

                                                                             
 
 
 CHIEF JUSTICE

 

 

PANEL:  LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

 

PUBLISH

 

DELIVERED:  November 18, 2010











[1]See Tex. Penal Code Ann. § 49.04(a) (Vernon 2003) (“A person
commits an offense if the person is intoxicated while operating a motor vehicle
in a public place.”).





[2]Officer
Harris said that he placed handcuffs on appellant because appellant had evaded
arrest.





[3]Officer
Harris opined during the motion to suppress hearing that appellant was “highly
intoxicated.”





[4]The
parties did not present evidence during the suppression hearing about the
result of appellant’s blood test.





[5]Appellant
states that his issues, which all concern probable cause, rely on “identical
facts.”  Although appellant contends that
the Texas constitution provides greater protection regarding search warrants
than the United States Constitution, he does not particularly explain what that
greater protection comprises or how it affects the probable cause
standard.  Thus, we will examine
appellant’s issues together.  See Arnold v. State, 873 S.W.2d 27, 33
& n.4 (Tex. Crim. App. 1993), cert.
denied, 513 U.S. 830 (1994); Garcia
v. State, 239 S.W.3d 862, 868 n.3 (Tex. App.—Houston [1st Dist.] 2007, pet.
ref’d), cert.
denied, 129 S. Ct. 505 (2008).





[6]“IMP”
is not defined in Officer Harris’s affidavit. 
He testified that “IMP” means an impounded vehicle.