NO. 07-11-00124-CR
NO. 07-11-00125-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 24, 2012
_____


THE STATE OF TEXAS, APPELLANT

V.

JOSHUA THOMAS COTTER, APPELLEE


_____

FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;

NOS. 60,378-B & 60,379-B; HONORABLE JOHN BOARD, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.


**OPINION**


Appellant, the State of Texas, appeals the trial court's order suppressing evidence obtained pursuant to a search warrant. In support, the State asserts the trial court erred in its determination that the supporting affidavit lacked sufficient information to establish probable cause that evidence of a crime would be found at the location to be searched. We reverse and remand for further proceedings consistent with this opinion.

**Background**

On October 22, 2009, an indictment was returned in Cause No. 60,378-B alleging that, on or about February 24, 2009, Appellee, Joshua Thomas Cotter, being a person who was seventeen years of age or older, with intent to arouse or gratify his sexual desire, intentionally communicated over the internet in a sexually explicit manner with a child younger than seventeen years of age, to-wit: A.S.,[1] by asking her to participate in the lewd exhibition of her genitals, or anus, or any portion of her breast below the top of the areola.[2]

On May 12, 2010, an indictment was returned in Cause No. 60,379-B alleging that, on or about February 24, 2010,[3] Appellee, intentionally and knowingly possessed visual material containing an image, to wit: an image transmitted to a computer or other video screen by telephone line, cable, satellite transmission, or other method, which visually depicted, and which Appellee knew visually depicted a child who was younger than eighteen years of age at the time the image of the child was made, engaging in sexual conduct, to-wit: the lewd exhibition of any portion of the female breast below the top of the areola.[4]

Prior to trial, in both cases, Appellee filed a motion seeking to suppress evidence seized in connection with the execution of a search warrant issued on September 1,

---

[1]We will use the victim's initials to protect her identity. *See, e.g.,* Tex. R. App. P. 9.8.

[2]*See* Tex. Penal Code Ann. § 33.021 (West 2011).

[3]The date of the offense in the indictment's caption indicates that the offense occurred on February 24, 2009. No issue has been raised by the parties regarding this discrepancy.

[4]*See* Tex. Penal Code Ann. § 43.26 (West 2011).

2009. Both motions asserted the search warrant in question was illegally issued because information contained in the supporting affidavit was both stale and insufficient to establish probable cause for the issuance of the warrant.

The search warrant was based upon the affidavit of John Blais, an investigator with the 47th Judicial District Attorney's Office. In that affidavit, Officer Blais averred that he was assigned to the Internet Crimes Against Children Task Force (ICAC Task Force) and that he had served as a police officer for nine and one-half years, eight years with the Amarillo Police Department and a year and one-half with the District Attorney's Office. He also averred that he had received specialized training from the ICAC Task Force in the areas of investigative techniques and undercover chat, and also attended multiple seminars on the internet and child pornography. According to his affidavit, Officer Blais believed Appellee was concealing at his residence located at 3216 North Bolton Street, Amarillo, Texas, "implements or instruments used in the commission of a crime, specifically: images of child pornography found on a computer hard disk or hard drive, constituting evidence of offenses of Possession and/or Promotion of Child Pornography."

In support of this belief, Officer Blais represented he had received, via the Amarillo Police Department,[5] information that, on February 24, 2009, A.S., a minor, was contacted by a then unidentified person using MSN messenger with the screen name pimpninainteasy2009@live.com. That individual showed A.S. a video of herself showing

---

[5]Officer Blais's affidavit further averred that the Amarillo Police Department received this information from the Naval Criminal Investigative Service (NCIS) at the naval base located in Kitsap, Washington.

her breasts.[6]  After showing her the video, the unidentified person threatened to post the video on the internet, show it to her friends, and post it on her parents' My Space account if she didn't "strip for him."  A.S. refused, ended the chat session, and reported the incident to NCIS.

On February 25, 2009, NCIS sent a "preservation request" to MSN pertaining to the account with the screen name of pimpinainteasy2009@live.com.  On April 9, 2009, a search warrant was issued to Microsoft Online Services in Redmond, Washington, for records pertaining to that screen name.  Microsoft responded with user information in Texas and an internet protocol address of 74.196.4.45.[7]  The historical information for that screen name also gave an additional IP address of 74.196.40.66, which was registered to Suddenlink Communications in Tyler, Texas.  On April 15, 2009, A.S. reported to NCIS that pimpinainteasy2009@live.com had again contacted her and threatened not to delete her video unless she stripped for him on her web cam.  Once again, A.S. refused.

On May 21, 2009, a search warrant was issued to Suddenlink Communications for records pertaining to the IP addresses associated with pimpinainteasy2009-@live.com.  The return showed that the subscriber information associated with the IP addresses in question belonged to Appellee at 3216 North Bolton Street in Amarillo, Texas.  The activation date for the account was September 19, 2008.

---

[6]A.S. admitted making this video in November 2008 (when she was fifteen years old) but had no idea how the individual identified as pimpinainteasy2009@live.com obtained a copy of the video.

[7]An internet protocol address, commonly referred to as an IP address, is a numerical label, consisting of four numbers separated by periods, uniquely assigned to every device (e.g. computer, printer, cell phone) participating in a computer network that uses the internet protocol for communication.  *United States v. Vázquez-Rivera*, 2011 U.S.App. LEXIS 25554, at 4-5 (1st Cir. Dec. 22, 2011) (citing *In re Pharmatrak, Inc.*, 329 F.3d 9, 13 n.1 (1st Cir. 2003)).

On August 31, 2009, Officer Blais drove by the address provided by Suddenlink and observed two vehicles—one registered to Angela Cotter, the other registered to Joshua Cotter, with both individuals giving the North Bolton Street address as their residence. Officer Blais further averred that, based upon his training and experience, evidence stored by means of electronic media was retrievable even after it was purportedly "erased or deleted" and that "individuals engaged in the possession, distribution, delivery, sale and/or manufacture of child pornography conceal and secret away the contraband and other evidence of their illegal activity in their residence(s) . . . ." Based upon this information, on September 1, 2009, a district court judge issued a search warrant authorizing a search of the North Bolton Street address. The warrant was executed the same day, whereupon officers seized a computer and numerous items including various images of pornographic material depicting children and a video of A.S. exposing her breasts. Following a suppression hearing on March 1, 2011, the trial court granted Appellee's motion to suppress and this appeal followed.

**Standard of Review**

A search warrant may not legally issue unless it is based on probable cause. U.S. Const. amend. IV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. Ann. art. 1.06 (West 2005). An appellate court normally reviews a trial court's ruling on a motion to suppress by using a bifurcated standard of review, giving almost total deference to the historical facts found by the trial court and reviewing *de novo* the trial court's application of the law. *Amador v. State,* 221 S.W.3d 666, 673 (Tex.Crim.App. 2007). However, when assessing the sufficiency of an affidavit for a search warrant, the reviewing court is limited to the four corners of the affidavit. *Hankins v. State,* 132 S.W.3d 380, 388

5

(Tex.Crim.App. 2004). Accordingly, when we review the magistrate's decision to issue a warrant, we apply a highly deferential standard because of the constitutional preference for searches to be conducted pursuant to a warrant as opposed to a warrantless search. *Swearingen v. State,* 143 S.W.3d 808, 810-11 (Tex.Crim.App. 2004) (citing *Illinois v. Gates,* 462 U.S. 213, 234-37, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). As long as the issuing magistrate had a substantial basis for concluding that probable cause existed, we will uphold that magistrate's probable cause determination. *State v. McLain*, 337 S.W.3d 268, 271 (Tex.Crim.App. 2011).

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, including reasonable inferences that may be drawn therefrom and the "veracity" and "basis of knowledge" of persons supplying information, there is a "fair probability" that contraband or evidence of a crime will be found at the specified location. *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex.Crim.App. 2007); *Ramos v. State,* 934 S.W.2d 358, 363 (Tex.Crim.App. 1996); *Wise v. State,* 223 S.W.3d 548, 556, (Tex.App.—Amarillo 2007, pet. ref'd) (citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Warrants should not be invalidated through "hyper-technical" interpretation of their supporting affidavits. *McLain*, 337 S.W.3d at 271; *Wise*, 223 S.W.3d at 238 (citing *Gates*, 462 U.S. at 236). Whether the facts alleged in a probable cause affidavit sufficiently support a search warrant is determined by examining the totality of the circumstances. *Gates*, 462 U.S. at 230-31.

When reviewing a probable cause determination, the issue is not whether there are other facts that could have, or even should have, been included in the affidavit; we

6

focus on the combined logical force of facts that are contained within the four corners of the affidavit, not those that are omitted from the affidavit. *Rodriguez,* 232 S.W.3d at 62. The only issue is whether the facts that actually were in the affidavit, combined with all reasonable inferences that might flow from those facts, are sufficient to establish probable cause. *See id.* at 64 ("We must defer to the [issuing] magistrate's finding of probable cause if the affidavit demonstrates a substantial basis for his conclusion.")

**Probable Cause Affidavit**

Officer Blais's affidavit alleges that, in February 2009, a person with the screen name of [pimpinainteasy2009@live.com](mailto:pimpinainteasy2009@live.com) sent pornographic video images of a child over the internet to the person depicted in the video, namely A.S., accompanied by an attempt to extort sexual conduct from A.S. in return for not disclosing the pornographic video images to her family and friends. Two months later, in April 2009, a person using the same screen name again contacted A.S. threatening not to delete the pornographic video unless A.S. stripped for him on her web cam. IP addresses associated with the screen name were subsequently traced to Appellee and his home address in Amarillo, Texas, through search warrants issued to Microsoft Online Services and Suddenlink.[8] Appellee's activation date for the Suddenlink account and screen name was prior to the date A.S. received any communication from [pimpinainteasy2009@live.com](mailto:pimpinainteasy2009@live.com). On August 31, 2009, Officer Blais investigated the address provided by Suddenlink, discovered a car parked at that address which was registered to Appellee, thereby inferentially confirming that Appellee currently resided at that address.

---

[8]Web page and internet providers such as Microsoft and Suddenlink have a vested interest in protecting their users from viewing materials that violate local, state, national, and international law. *See Dawes v. State,* No. 05-08-00651-CR, 2009 Tex. App. LEXIS 2364, at *13-14 (Tex.App.—Dallas April 3, 2009, no pet.) (not designated for publication). Information from such sources carries an indicia of reliability*. Id.*

Considering the totality of the circumstances, we conclude the issuing magistrate could have reasonably inferred from the facts set forth in the affidavit the following: Suddenlink provided internet access to Appellee at his residence located at 3216 North Bolton Street, Amarillo, Texas; computing devices connecting to the internet through that access were assigned specific IP addresses; those IP addresses were associated with the screen name [pimpinainteasy2009@live.com](mailto:pimpinainteasy2009@live.com); and, someone using that screen name possessed images depicting child pornography. Therefore, we further hold the issuing magistrate could have reasonably concluded a probability existed that child pornography would be found at Appellee's residence. *See State v. Moore*, 2007 Tex.App. LEXIS 9628, at *15 (Tex.App.--Dallas Dec. 11, 2007, pet. ref'd) (not designated for publication).

Appellee relies heavily on *Taylor v. State*, 54 S.W.3d 21 (Tex.App.—Amarillo 2001, no pet.) in asserting the affidavit is deficient. Upon comparison, however, the circumstances of *Taylor* are distinguishable from the facts of this case. In *Taylor*, there was no specific evidence that the individual who was the subject of the search was registered to the screen name used to send the pornographic image at the time of its transmission. 54 S.W.3d at 26. Rather, the affiant's representation was that the screen name "somehow c[ame] back to [the individual]." *Id.* Here, we have evidence from two reliable entities, Microsoft Online Services and Suddenlink, that Appellee is the internet subscriber associated with the IP addresses which are associated with the screen name responsible for the transmission of the pornographic video and requests that A.S. strip for him on her web cam. In addition, Appellee's internet subscription with Suddenlink commenced *prior* to the two transmissions to A.S. and it was verified by law

8

enforcement as belonging to Appellee shortly *after* the transmissions.  More importantly, there was no evidence in *Taylor* that the appellant retained or collected child pornography; *id.*, whereas, here, there was evidence that the pornographic video in question was being retained by the sender, indicating a reasonable probability that the video could still be found in the residence occupied by the sender.  Further, unlike *Taylor* where there was the transmission of a single pornographic photograph over the internet, here the transmission of the pornographic video, coupled with the sexually related demands made upon A.S., in two separate instances, creates an inference that the sender had the propensities of a pedophile and was likely to maintain that media on premises subject to his control.  *See State v. Duncan*, 72 S.W.2d 803, 808 (Tex.App.-- Fort Worth 2002, pet. ref'd) (distinguishing *Taylor* on the basis of the suspected party's tendency to collect or possess child pornography).

### Stale Information

We also agree with Appellant's assertion that information contained in Officer Blais's affidavit was not stale.  To invalidate a warrant, the facts relied upon in the probable cause affidavit must not have become "stale" by the time the warrant is issued; *Kennedy v. State,* 338 S.W.3d 84, 93 (Tex.App.—Austin 2011, no pet.), and the "proper method to determine whether the facts supporting a search warrant have become stale is to examine, in light of the type of criminal activity involved, the time elapsing between the occurrence of the events set out in the affidavit and the time the search warrant was issued."  *Crider v. State,* No. PD-0592-10, 2011 Tex. App. LEXIS 1594, at *8 (Tex.Crim.App. Nov. 16, 2011) (quoting *McKissick v. State,* 209 S.W.3d 205, 214 (Tex.App.—Houston [1st Dist.] 2006, pet. ref'd)).

Although the passage of time is one factor that should be considered when determining if the information in an affidavit is stale, the amount of time passed is less significant if the affidavit contains facts showing "activity of a protracted and continuous nature, i.e., a course of conduct." *Kennedy*, 338 S.W.3d at 93 (citing *McKissick*, 209 S.W.3d at 214). Further, a determination regarding whether the information in an affidavit is stale should also involve consideration of the type of property to be seized and the probability that the property has been consumed or relocated. *Kennedy*, 338 S.W.3d at 93 (citing *Bradley,* 966 S.W.2d at 875).

Although approximately four months passed between the last communication to A.S. and the issuance of the search warrant in question, the property the subject of the search, a pornographic video transmitted over the internet via digital media, is the type of item that is customarily uploaded onto the internet and/or downloaded and stored on a personal computer, and such property is often retrievable even after it had been purportedly erased from that computer. *McKissick,* 209 S.W.3d at 215. Furthermore, that type of property is not transient in nature such as drugs which are consumable. *Id.* The communications to A.S. were of a continuing nature and essentially the same in content, i.e., a threat to publish the pornographic video over the internet if she did not sexually perform for him using a web cam. In addition, A.S. was told that the video *would not be deleted* until she stripped on the web via her web cam, which she never did.

Considering the affidavit as a whole and the reasonable inferences it supports, we conclude the issuing magistrate had a substantial basis to find that a fair probability existed that the evidence sought would continue to be on or be recoverable from

10

Appellee's computer and that that computer would be readily accessible to Appellee at his residence. Accordingly, the information contained in Officer Blais's affidavit was not stale. Consequently, we hold there is a substantial basis to support the issuing magistrate's conclusion that a "fair probability" existed that evidence of a criminal offense would be found at Appellee's residence and we sustain Appellant's issue.

## Conclusion

Having sustained the State's issue, we reverse the trial court's written order of March 9, 2011, granting Appellee's motion to suppress, and we remand the case to the trial court for further proceedings consistent with this opinion.

Patrick A. Pirtle
Justice

Publish.

11